IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| --- | --- | --- |
| vs. | : | |
| LEE E. DAVIS, JR. | : | NO. 09-343 |

DuBOIS, J.                                                                              March 16, 2012

**M E M O R A N D U M**

## I. INTRODUCTION

The Superseding Indictment in this case charges defendant Lee E. Davis, Junior, with seven counts of wire fraud and one count of mail fraud arising from an alleged scheme that took place between June 2003 and January 2009 in which defendant fraudulently accepted funds for surety bonds and workers' compensation insurance without ever obtaining such bonds or insurance policies. Presently before the Court is the Government's Motion to Revoke Bail, filed on March 5, 2012 ("Second Motion to Revoke Bail"). Following a hearing on March 14, 2012, the Court granted the government's motion and issued an oral Order revoking bail and staying execution of the Order until March 22, 2012.[1] This Memorandum amplifies the bases for the Court's oral Order granting the Government's Second Motion to Revoke Bail.

## II. LEGAL STANDARD

18 U.S.C. § 3148(b) provides that a judicial officer shall revoke a defendant's pretrial release and order him detained "if, after a hearing, the judicial officer:

---

[1] The Court stayed execution of the Government's Second Motion to Revoke Bail to permit defendant to undergo medical testing at Lankenau Hospital.

(1) finds that there is –

    (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or

    (B) clear and convincing evidence that the person has violated any other condition of release; and

(2) finds that –

    (A) based on the factors set forth in section 3142(g) of [Title 18], there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or

    (B) the person is unlikely to abide by any condition or combination of conditions of release."

If the Court finds probable cause to believe that the person committed a felony while on release, "a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." Id. Otherwise, the government must establish the § 3148(b)(2) factors by a preponderance of the evidence. United States v. Concepcion, No. 95-624-1, 1996 WL 146107, at *2 (E.D. Pa. Apr. 1, 1996) (citing United States v. Gotti, 794 F.2d 773, 778 (2d Cir. 1986)).

## III. FINDINGS OF FACT

Having reviewed the submissions of the parties and conducted a hearing on March 14, 2012, and incorporating the evidence received during the March 15 and 17, 2011, hearings on the Government's First Motion to Revoke Bail and Government's Supplemental First Motion to Revoke Bail, the Court makes the following findings of fact:

1. Defendant is charged by Superseding Indictment with seven counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of mail fraud, in violation of 18 U.S.C. § 1341, arising from an alleged scheme that took place between June 2003 and January 2009 in which

defendant fraudulently accepted funds for surety bonds and workers' compensation insurance without ever obtaining such bonds or insurance policies.

2. At defendant's initial appearance on May 27, 2009, before Magistrate Judge Jacob Hart, defendant and the government stipulated to own-recognizance bail of $25,000. Defendant also stipulated to conditions that, inter alia, he would "have no contact with co-defendants, potential witnesses in this case, or individuals engaged in any criminal activity" and that he would "not commit a Federal, State, or local crime during release." (May 28, 2009, Conditions of Release Order.[2])

3. On June 10, 2009, this Court held a continuance hearing at which defendant presented an oral motion for an amendment to his conditions of release. By Order dated June 10, 2009, the Court amended the provision of bail which prohibited defendant from any contact with "co-defendants, potential witnesses in this case, or individuals engaged in any criminal activity" to read:

> 1. Defendant shall have no contact with potential witnesses in this case, excepting only contact with potential witnesses by defense counsel with or without defendant present. Any communications to defendant by potential witnesses by telephone, in writing, or by electronic means, shall be referred to defense counsel without comment by defendant; and,
>
> 2. Defendant shall have no contact with individuals engaged in criminal activity.

(June 10, 2009, Order.)

4. On June 10, 2009, following the continuance hearing, defendant told a potential witness that he was not permitted to contact him. Defendant then sent the witness two text

---

[2] This Order was incorrectly dated "May 27, 2008," but was entered on the docket on the correct date, May 28, 2009.

3

messages. One of those messages read as follows: "thanks…maybe we shld both delete these txts. don't want to get in any hot water even tho we are both just tryin to do the right thing here." [sic.] At a hearing on August 14, 2009, counsel for defendant did not contest that defendant sent these messages, and the Court admonished defendant regarding compliance with his bail conditions. (Aug. 14, 2009, Tr. 3–13.)

5. On March 3, 2011, defendant was indicted in this District in Criminal no. 11-123 and charged with eight counts of wire fraud and three counts of mail fraud ("new indictment").[3] These charges arose from an alleged scheme by which defendant, inter alia, fraudulently withdrew money from a trust that had been established for his daughter. The events giving rise to the new indictment occurred between on or about September 2009 and on or about November 2010, while defendant was on release in this case.

6. The Court held hearings on March 15 and 17, 2011, on the Government's First Motion to Revoke Bail and the Government's Supplemental First Motion to Revoke Bail. During those hearings, the government presented evidence as to the defendant's indictment in Criminal no. 11-123.

7. At the hearing on March 15, 2011, the Court found that there was probable cause to believe that defendant had committed a federal crime while on release—specifically, the offenses alleged in the new indictment. (March 15, 2011 Hr'g Tr. 14.) Nonetheless, the Court denied the Government's First Motion to Revoke Bail by Order dated March 17, 2011. Instead, the Court modified defendant's bail and conditions of release. Specifically: defendant's own-recognizance bond was increased from $25,000 to $100,000; the condition that defendant maintain his residence at 206 Hilloch Drive, West Chester, Pennsylvania, was modified to allow defendant to

---

[3] That case was assigned to the Honorable Juan Sanchez.

"reside at such other residence as is approved by the United States Pretrial Services Office"; and defendant was subjected to computer-usage restrictions and computer monitoring and was prohibited from opening lines of credit. (March 17, 2011, Order, Docket no. 110.) All other conditions of bail remained the same, including the condition that defendant "not commit a Federal, State, or local crime during release."

8. The case was scheduled for trial on January 23, 2012. Shortly before the trial, defendant advised the Court that he wanted to plead guilty in this case and Criminal no. 11-123. As a consequence, the Court scheduled a Change of Plea Hearing for January 23, 2012. At the hearing, defendant advised the Court that he no longer wanted to plead guilty, that he was terminating the services of his attorney, Susan M. Lin, Esquire, of the Federal Community Defender Office, and that he had entered into discussions to retain A. Charles Peruto, Junior, Esquire, to represent him. The Court scheduled a Status Hearing for February 6, 2012, which the Court instructed Ms. Lin to attend in the event defendant's discussions with Mr. Peruto were unsuccessful.

9. Some time between the January 23, 2012, and February 6, 2012, hearings, defendant gave Mr. Peruto a check for $50,000, dated January 30, 2012, drawn on the account of "Ellen Olimpi Davis" at Sovereign Bank, and payable to "A. Charles Peruto, Jr." (Check, Gov't Ex. 1.) The signature on the check reads "Ellen Olimpi Davis." (Id.) Defendant told Mr. Peruto not to deposit the check until February 6, 2012, and Mr. Peruto complied with the request. (Feb. 6, 2012, Hr'g Tr. 5.) Mr. Peruto intended to begin representing defendant once the check cleared. (Id.) He entered his appearance on February 8, 2012.

10. Ellen Olimpi Davis is defendant's wife. She and defendant share a home at 206 Hilloch Drive, West Chester, Pennsylvania, 19380. The balance in the Sovereign Bank checking

5

account between October 11, 2011, and February 12, 2012, was never more than $1,554.82. (See Account Statements, Gov't Ex. 2.)

11. The check to Mr. Peruto was rejected for insufficient funds on February 7, 2012. (Id. at 14.) The exact date when Mr. Peruto learned that the check would not be honored is not clear on the present state of the record.

12. At some point after Mr. Peruto deposited the check, a woman called him, identified herself as defendant's wife, and stated that the account contained sufficient funds.

13. On February 27, 2012, Mr. Peruto filed a Motion to Withdraw as Counsel based on defendant's attempt to pay his retainer fee with a check that was returned for insufficient funds.

14. The Court scheduled a hearing on March 6, 2012 on Mr. Peruto's Motion to Withdraw as Counsel and the Second Motion to Revoke Bail. Defendant did not appear because, on the morning of the hearing, he was admitted to Paoli Hospital complaining of chest pain. The Court rescheduled the hearing for March 14, 2012, and ordered Ms. Lin to file a response to the Second Motion to Revoke Bail before the hearing. Ms. Lin filed Defendant's Response in Opposition to Government's Motion to Revoke Bail on March 12, 2012.

15. On March 14, 2012, the Court held a hearing on Mr. Peruto's Motion to Withdraw as Counsel and the Second Motion to Revoke Bail. The Court granted Mr. Peruto's motion and re-appointed Ms. Lin and Maranna Meehan, Esquire, to represent defendant. The Court then addressed the Government's Second Motion to Revoke Bail.

IV. CONCLUSIONS OF LAW

To revoke bail, the Court must find that subsections (b)(1) and (b)(2) of 18 U.S.C. § 3148 are both satisfied. Subsection (b)(1) requires the Court to find either "probable cause to believe

that the [defendant] has committed a Federal, State, or local crime while on release" or "clear and convincing evidence that the [defendant] has violated any other condition of release."

The Court has already concluded, based on the testimony proffered at the March 15 and 17, 2011, hearings, that there is probable cause to believe that defendant committed the offenses for which he was indicted in Criminal no. 11-123 related to alleged fraudulent transfers from a trust account. Specifically, the Court found probable cause that defendant committed wire fraud in violation of 18 U.S.C. § 1343 and mail fraud in violation of 18 U.S.C. § 1341.

The Court further concludes, based on the testimony proffered and the other evidence presented at the March 14, 2012, hearing, that there is probable cause to believe defendant has committed a state criminal offense while on pretrial release. Specifically, there is probable cause that defendant has committed the Pennsylvania offense of passing a bad check, in violation of 18 Pennsylvania Consolidated Statutes Section 4105(a)(1). That section provides: "A person commits an offense if he issues or passes a check or similar sight order for the payment of money, knowing that it will not be honored by the drawee." Id. The offense of passing a bad check has two elements: first, that defendant passed a check, and second, that defendant knew it would not be honored by the drawee. See id.; see also Pa. Standard Crim. Jury Inst. § 15.4105A (2010). Because the check was for $50,000, this offense is a misdemeanor. See 18 Pa. Cons. Stat. § 4105(c).

The government introduced evidence demonstrating that, some time between January 23, 2012, and February 6, 2012, defendant gave his attorney, Mr. Peruto, a check for $50,000. The check was signed by defendant's wife and was to be drawn on defendant's wife's account at Sovereign Bank. The account balance between October 11, 2011, and February 12, 2012, was never more than approximately $1560. When he gave Mr. Peruto the check, defendant knew that

7

he needed to pay Mr. Peruto a $50,000 retainer fee in order for Mr. Peruto to represent defendant in this case. Mr. Peruto made several statements to that effect in open court on February 6, 2012. Moreover, defendant told Mr. Peruto not to cash the check until the date of the next court hearing, Feburary 6, 2012, which evidences the fact that defendant was aware the check would not be honored until February 6, 2012, at the earliest. Although defendant's name does not appear on the account, the circumstantial evidence supports the government's contention that defendant knew the check would not be honored. See Commonwealth v. Bagari, 579 A.2d 942, 944–45 (Pa. Super. Ct. 1990) (upholding conviction for passing bad check when defendant failed to introduce evidence that he attempted to cover a check by making a deposit after writing the check). The Court thus concludes that the government's evidence establishes probable cause that defendant committed the crime of passing a bad check in violation of 18 Pennsylvania Consolidated Statutes Section 4105(a)(1).

While the findings of probable cause as to the new indictment and the offense of passing a bad check satisfy 18 U.S.C. § 3148(b)(1)(A), there is also clear and convincing evidence that defendant violated the conditions of his pretrial release by violating the condition imposed on June 10, 2009, that he "have no contact with potential witnesses in this case, excepting only contact with potential witnesses by defense counsel with or without defendant present." Defendant did not contest at the August 14, 2009, hearing, that he sent text messages to a potential witness on June 10, 2009, in violation of that condition. The Court thus finds that there is clear and convincing evidence that defendant violated the conditions of his bail by contacting a potential witness, satisfying the requirements of 18 U.S.C. § 3148(b)(1)(B).

Subsection (b)(2) of 18 U.S.C. § 3148 is also satisfied. The government has established by a preponderance of the evidence that defendant "is unlikely to abide by any condition or

combination of conditions of release." 18 U.S.C. § 3148(b)(2)(B).  There is probable cause that defendant has committed both federal and state offenses since being granted release pending trial in this case in May 2009.  Defendant also violated his conditions of release by improperly contacting witnesses within hours of being admonished against doing so in open court.  The most recent violation of his bail conditions occurred even though the Court declined to revoke defendant's pretrial release on March 17, 2011, based on the new federal indictment.  The Court thus concludes that defendant "is unlikely to abide by any condition or combinations of conditions of release."[4]

The government has satisfied its burden of demonstrating (1) that there is either probable cause to believe defendant has committed a federal, state, or local crime while on release and clear and convincing evidence that defendant has violated another condition of release, 18 U.S.C. § 3148(b)(1), and (2) that defendant is unlikely to abide by any condition or combination of conditions of release, id. § 3148(b)(2).

**V. CONCLUSION**

For the reasons stated above, the Government's Second Motion to Revoke Bail is granted.  An appropriate Order follows.

---

[4] Because the Court's decision to revoke defendant's pretrial release relies on 18 U.S.C. § 3148(b)(2)(B), which requires a finding that defendant "is unlikely to abide by any condition or combination of conditions of release," the Court concludes that United States v. Himler, 797 F.2d 156 (3d Cir. 1986), does not apply in this case.